# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

KURT W. DAVIS,            )     Case No. 5:19-cv-2929
                         )
       Plaintiff,        )     Judge J. Philip Calabrese
                         )
v.                        )     Magistrate Judge
                         )     Carmen E. Henderson
COMMISSIONER OF SOCIAL  )
SECURITY,              )
                         )
       Defendant.      )
                         )

## OPINION AND ORDER

Plaintiff Kurt Davis applied for supplemental security income and disability insurance benefits. His applications were denied, both initially and after reconsideration. Plaintiff requested a hearing, after which the administrative law judge denied his applications. He appealed, but the appellate counsel declined review, making the ALJ's opinion the Commissioner's final decision. Plaintiff then sought review in federal court. The Magistrate Judge recommends affirming the Commissioner's decision, and Plaintiff objects to that recommendation.

For the following reasons, the Court **OVERRULES** Plaintiff's objections (ECF No. 19), **ADOPTS** the report and recommendation (ECF No. 18), and **AFFIRMS** the Commissioner's decision denying Mr. Davis's application for a period of disability, supplemental security income, and disability insurance benefits.

## BACKGROUND

In early 2017, Mr. Davis applied for supplemental security income and disability insurance. He claimed that as of December 2015, he was disabled due to a

head injury and abuse he suffered as an infant. Both applications were denied initially and after reconsideration. He then requested a hearing before an administrative law judge.

## A. The Administrative Hearing

On December 10, 2018, nearly two years after Mr. Davis initially applied for benefits, the ALJ conducted a hearing to determine whether Mr. Davis was disabled as the Social Security Act defines that term. (ECF No. 11, PageID #91–103.) Three individuals testified at the hearing before the ALJ, including Mr. Davis (*id.*, PageID #111–38), his mother, Julia Davis (*id.*, PageID #116–44), and a vocational expert, William Kiger (*id.*, PageID #144–51). Lindsey Foradis, Dr. Robert Dallara, and Drs. Juliette Savitscus and Katherine Reid, two State psychologists, also provided opinion testimony. (*Id.*, PageID #98–101.)

## B. Evidence Related to Plaintiff's Objections

Opinions and testimony from Foradis, Julia Davis, Dr. Dallara, and Drs. Savitscus and Reid are relevant to Plaintiff's objections.

### B.1. Lindsey Foradis

Foradis is a nurse practitioner. She examined Mr. Davis on February 14, 2017, and again on March 1, 2017. (*Id.*, PageID #101.) On a check-box form, Foradis identified Mr. Davis as having a permanent disability. (*Id.*, PageID #101, 636–38.) Dr. Slaga cosigned the form with Foradis. (*Id.*, PageID #638.) However, no evidence indicates that Dr. Slaga ever saw or examined Mr. Davis. (*Id.*, PageID #565, 567, 569.) The ALJ concluded that Foradis's finding that Mr. Davis had a permanent disability was inconsistent with Mr. Davis's work history. (*Id.,* PageID #101.) For

this reason, because Foradis was not an acceptable medical source, and because determining whether someone is "disabled" under the Social Security Act is a decision reserved for the Commissioner, the ALJ gave Foradis's opinion little weight. (*Id.*)

### B.2.   Julia Davis

At the hearing before the ALJ, Ms. Davis testified that her son is like a 5-year-old child, requires the assistance of his parents to attend to his mail and budget his money, and fails to keep his apartment clean or engage in proper hygiene. (*Id.*, PageID # 138–43.)  The ALJ recounted and considered Ms. Davis's testimony. (*Id.*, PageID #98.)   In contrast to Ms. Davis's description of her son and his capabilities, the record evidence demonstrated that Mr. Davis has a valid driver's license, drives every day, cooks for himself, does his laundry, engages with other people, and has proper self-care and hygiene. (*Id.*, PageID, #177–79, 616–17.)

### B.3.   Dr. Dallara's Psychological Examination

On April 26, 2017, Dr. Dallara performed a psychological examination of Mr. Davis. (*Id.*, PageID #613.)  He determined that Mr. Davis has intellectual functioning in the "extremely low range" but "would be expected to be able to understand and apply instructions in a work setting consistent with extremely low intellectual abilities." (*Id.*, PageID #617.)  The ALJ accorded Dr. Dallara's opinion great weight because the opinion was from an acceptable medical source that was consistent with the record. (*Id.*, PageID #101.)   Specifically, the ALJ found Dr. Dallara's opinion "consistent with the record in limiting the claimant to unskilled work with no production rate pace, minimal interactions, and low stress, including limited decision making and only occasional changes." (*Id.*)

### B.4.    State Agency Psychologists Drs. Savitscus and Reid

The State psychologists evaluated whether Mr. Davis had any medically determinable impairments that affected his ability to function in a work setting. (*Id.*, PageID #235, 274.) They considered Mr. Davis's functionality in understanding and memory, concentration and persistence, and social interactions. (*Id.*, PageID #240–41, 280–81.) The doctors opined that Mr. Davis "can perform simple, routine tasks with 1-3 steps" in a slow-paced work environment with occasional contact with others. (*Id.*, PageID #240, 280.) Both doctors also suggested that Mr. Davis had an IQ score of 71. (*Id.*) The ALJ gave their opinions great weight because the doctors are "acceptable medical sources with program knowledge" and their "opinions were largely consistent with the record." (*Id.*, PageID #100.)

### C.    The ALJ's Decision

After taking testimony and considering the record, the ALJ issued a written decision denying Mr. Davis's applications. (*Id.*, PageID #91–103.) In that decision, the ALJ first determined he was not bound by a prior finding about Mr. Davis's residual functional capacity because Mr. Davis provided new evidence that "show[ed] a new and material change in circumstances," which began on December 8, 2015. (*Id.*, PageID #91–92.) Then, the ALJ outlined and conducted the customary five-step inquiry to determine whether Mr. Davis was disabled under 20 C.F.R. §§ 404.15520(a) and 416.920(a). (*Id.* at PageID #92.)

At step one, the ALJ found that Mr. Davis had not engaged in substantial gainful activity since at least December 8, 2015. (*Id.*, PageID #94.)

At step two, the ALJ determined Mr. Davis had several severe impairments, including "attention-deficit hyperactivity disorder (ADHD), cognitive disorder; developmental disorder; memory loss; post-surgical change involving right parietal lobe and foreign body along inferior margin of left orbit status post history of traumatic brain injury (TBI)." (*Id.*) The ALJ also identified that Mr. Davis suffers from "syncope and collapse, other seizures, sacroiliitis with low back pain; osteoarthritis of left hip, foot and ankle; atherosclerotic coronary artery disease (CAD) and non-rheumatic mitral valve prolapse, emphysema, and obesity." (*Id.*)

Moving to step three, the ALJ determined Mr. Davis did not have an impairment or combination of impairments that meets or medically equals the severity requirement of one of the enumerated impairments in 20 C.F.R. Part 404, Subpart P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.*, PageID #94–97)

As to step four, the ALJ determined that, given Mr. Davis's condition, he could not perform his past relevant work as a farmworker or sandblaster. (*Id.*, PageID #101–02.) The ALJ did find, however, that Mr. Davis's residual functional capacity would permit him to perform light work, with several exceptions:

> The claimant can never climb ladders, ropes and scaffolds. The claimant can occasionally climb ramps and stairs, occasionally stoop and crawl, frequently balance, kneel and crouch. The claimant must avoid concentrated exposure to extreme cold and extreme heat, humidity, and avoid all exposure to hazards such as unprotected heights and moving mechanical parts. The claimant can perform simple, routine and repetitive tasks, but cannot perform tasks at a production rate pace such as assembly line work, can make only simple work-related decisions, and should not be responsible for the safety or welfare of others.

The claimant can interact on an occasional basis with supervisors and coworkers, with no more than incidental interaction with the general public, but should be limited to superficial contact meaning no sales, arbitration, negotiation, conflict resolution or confrontation, no group, tandem or collaborative tasks, no management, direction or persuasion of others. The claimant can respond appropriately to occasional changes in a routine work setting, as long as any such changes are easily explained and/or demonstrated to him prior to gradual implementation.

(*Id.*, at PageID #97.)

Finally, at step five, the ALJ determined that Mr. Davis can perform jobs that exist in significant numbers in the national economy given his residual functional capacity, age, education, and work experience. (*Id.,* PageID #102.) Therefore, the ALJ found that Mr. Davis is not disabled. (*Id.,* PageID #103.) The Commissioner declined further review, rendering the ALJ's decision final on October 28, 2019. (*Id.*, PageID #64.)

### D.    The Report and Recommendation

In challenging the Commissioner's final decision, Plaintiff raised two issues— that the ALJ: (1) did not consider substantial evidence, and (2) did not meet his burden at step five of the analysis. (ECF No. 13, PageID #785.)

### D.1.    The R&R and Substantial Evidence

First, Plaintiff maintained that the ALJ failed to accord proper weight to his mother's testimony and to Foradis's report, and also failed to recognize his marked limitations under Listing 12.05. (*Id.*, PageID #798–802.) The Magistrate Judge's report concludes that the weight the ALJ gave to both the mother's testimony and Foradis's opinion was proper. (ECF No. 18., PageID #857–58.) She determined that because Plaintiff's mother is a non-medical source, her opinions about Mr. Davis's

abilities and functionality are not entitled to deference. (*Id.*, PageID #858.) Further, the Magistrate Judge reports that the ALJ did not disregard Ms. Davis's testimony; to the contrary, the record reflects substantial evidence that the ALJ properly considered it. (*Id.*)

The Magistrate Judge determined that the ALJ correctly afforded Foradis's report little weight because she does not qualify as an acceptable medical source. (*Id.*, PageID #857.) Although Dr. Slaga co-signed the report, the Magistrate Judge agreed with the ALJ that there was no evidence he had an "ongoing treatment relationship with the Claimant." (*Id.*, PageID #855.) Accordingly, the Magistrate Judge determined that Dr. Slaga is not a treating source merely because he signed the check-box form with Foradis. (*Id.,* PageID #854–56.) Also, the Magistrate Judge agreed that the ALJ correctly determined the substantial evidence supported the finding that Ms. Foradis's report amounted to a "non-treating source" opinion. (*Id.*, PageID #855–56.)

Regarding the Listing 12.05 determination, the Magistrate Judge agreed with the ALJ's conclusion that "Claimant did not meet or equal" that Listing's requirements. (*Id.*, PageID #864.) She noted that Listing 12.05 addresses intellectual disorders and sets forth two paths for satisfying its requirements. 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.05(B). Mr. Davis argues the ALJ erred by not recognizing an alleged IQ score of 71 and by failing to find marked limitations in at least two functional domains. (ECF No. 13, PageID #798–801.) The Magistrate Judge reports that, even if the ALJ failed to recognize Mr. Davis's IQ score, Plaintiff

still had not demonstrated "marked limitations in two or more functional areas as required" under Listing 12.05. (ECF No. 18, PageID #860.)

To support this view of the record, the Magistrate Judge recounted Dr. Dallara's and the State psychologists' opinions, all of which she determined support the ALJ's finding that Mr. Davis is not disabled under Listing 12.05. (*Id.*, PageID #862–63.) Finally, the Magistrate Judge determined that "substantial evidence supports the ALJ's decision that Claimant's ability to function independently, appropriately, effectively, and on a sustained basis is fair, and not seriously limited as required for a marked limitation finding." (*Id.*)

### D.2.   The R&R and Step Five

As for whether the ALJ satisfied his burden at step five, the Magistrate Judge reports that he did, and substantial evidence supports that finding. (*Id.*, PageID #867–68.) Before evaluating a claimant's past and future work opportunities at step four or five, the administrative law judge must determine the claimant's residual functional capacity. 20 C.F.R. § 416.945. That finding is then used to evaluate whether a person could perform their past relevant work and whether the Commissioner met his burden at step five. (*Id.*)

The Magistrate Judge reports that Plaintiff improperly attempts to attack the ALJ's determination at step five by arguing that the "ALJ failed to take into consideration any of the limitations set forth by Ms. Foradis, his school records, the observations of other doctors, or the testimony of his mother." (ECF No. 18, PageID #865.) But the Magistrate Judge determined the ALJ "properly met his burden" by reviewing the testimony of the vocational expert, "who testified that work exists in

the national economy that accommodates Claimant's [RFC] and vocational factors."
(*Id*., PageID #866.) Ultimately, the Magistrate Judge recommends the Court affirm
the Commissioner's decision on all fronts. (*Id.,* PageID #868.)

### E.    Objections

Plaintiff timely objected to the Magistrate Judge's report and recommendation.
([ECF No. 19](.)  He makes four objections:  (1) the Magistrate Judge improperly
considered Foradis's report; (2) the Magistrate Judge improperly considered the
testimony of Mr. Davis's mother; (3) the ALJ failed to recognize Mr. Davis's marked
limitations under Listing 12.05; and (4) the ALJ failed to consider Mr. Davis's prior
work history at step five. (*See generally* [ECF No. 19](.)

## ANALYSIS

The Court reviews de novo the portions of a Magistrate Judge's report and
recommendation to which specific objections are made.  28 U.S.C. § 636(b)(1)(C);
*United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  "De novo review
requires the Court to re-examine the relevant evidence a magistrate judge reviewed
to determine whether to accept, reject, or modify the report and recommendation."
*Scott v. Saul*, No. 1:19-cv-2393, 2021 U.S. Dist. LEXIS 92052, at *12–13 (N.D. Ohio
May 14, 2021); *see* 28 U.S.C. 636(b).

When a party objects, review is limited to determining whether the
Commissioner's decision is supported by substantial evidence in the record and by
reviewing any legal errors.  *Wright v. Massanari*, 321 F.3d 611, 614–15 (6th Cir.
2003).  "Substantial evidence" is more than a scintilla, but less than a preponderance.
*Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  Substantial

evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* If substantial evidence supports the Commissioner's findings, then the Court accepts them as conclusive, even if it would have reached a different outcome on the same facts. 42 U.S.C. § 405(g).

## I.     The Proper Weight of Foradis's Report

Plaintiff objects to the Magistrate Judge's treatment of Dr. Slaga's co-signature on Foradis's report. ([ECF No. 19](), PageID #869–70.) Plaintiff argues that the Magistrate Judge erred by focusing on Mr. Davis's treatment relationship with Dr. Slaga and failed to "consider [Foradis's] report." (*Id.*)

This first objection holds little weight. A "treating source" is any "acceptable medical source," including a licensed medical physician, who has an "ongoing treatment relationship" with the claimant." *Hargett v. Commissioner of Soc. Sec.*, 964 F.3d 546, 551 (6th Cir. 2020) (citing 20 C.F.R. §§ 404.1502(a)(1) & 404.1527(a)(2); *Gayheart v. Commissioner of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (describing a "treating source" as "a medical source who regularly treats the claimant")). By itself, a nurse practitioner's opinion is not a "treating source opinion" and is not entitled to controlling weight. *Cruse v. Commissioner of Soc. Sec.*, 502 F.3d 532, 540–42; *see also Gayheart.*, 710 F.3d at 376 (cleaned up). But if a treating source (like a physician) co-signs a nurse practitioner's opinion, an ALJ may afford it controlling weight. *Engebrecht v. Commissioner of Soc. Sec.,* 572 F. App'x 392, 399 (6th Cir. 2014). Nevertheless, only visiting a doctor once or twice does not establish an "ongoing treatment relationship" sufficient to make that physician's opinion a

"treating source opinion." *Smith v. Commissioner of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

Plaintiff's objection is even more attenuated. There is little record evidence that Dr. Slaga and Mr. Davis were in an "ongoing treatment relationship" that would make his signature on Foradis's report "a treating source opinion." Plaintiff argues *Hargett* presents a case analogous to his situation. ([ECF No. 17](#), PageID #841.) That reliance is misplaced. In *Hargett*, the court remanded a disability determination in part because the ALJ failed to acknowledge the co-signature of the claimant's treating physician on a non-treating source's report. *Hargett*, 964 F.3d at 553–55. The physician in *Hargett,* however*,* was indisputably the claimant's "treating source" and had treated claimant "at least six times." *Id.* at 551.

In contrast, during Mr. Davis's two visits with Foradis, there is no evidence Dr. Slaga treated Plaintiff at all. ([ECF No. 11](#), PageID #624–38.) Beyond Plaintiff's somewhat limited interactions with Foradis, there is no evidence Dr. Slaga saw or treated Mr. Davis on any other occasion. (*Id.*, PageID #628–29.) The Magistrate Judge properly determined Dr. Slaga was not a treating source and did not err in reaching the conclusion that the ALJ properly accorded Foradis's opinion the same weight as a nurse practitioner would normally receive.

This does not mean an outright disregard of Foradis's opinion would be permissible. Although nurse practitioner reports are not acceptable medical sources, they are considered "other source" opinions. 20 C.F.R. § 404.1513. An administrative law judge has discretion to determine the proper weight to afford opinions from "other

sources." *Cruse*, 502 F.3d at 541. But other-source opinions can never establish a disability. *Id.* (citing SSR 06–03P, 2006 WL 2329939). Nonetheless, the finder of fact should give weight to the other-source opinions and evaluate them based on relevant factors, including: (1) the length and frequency of the relationship; (2) the opinion's consistency with other admitted evidence; (3) the opinion's supporting evidence; (4) the opinion's explanation; (5) the provider's specialty or area of expertise related to the individual's impairments; and (6) any other factors that tend to support or refute the opinion. SSR 06–03P, 2006 WL 2329939.

There is substantial evidence that the ALJ properly considered Foradis's opinion, and the Magistrate Judge noted as much. (ECF No. 11, PageID #101; ECF No. 18, PageID #856–57.) The ALJ decided to afford "little weight" to Foradis's opinion because she only saw Mr. Davis twice and her opinion was both inconsistent with other record evidence and inappropriately determined Mr. Davis had a "permanent disability." (ECF No. 11, PageID #101.)

Additionally, the Sixth Circuit has held that check-box forms, which only require an individual to check a box or fill in blanks that lack other narrative or explanation, are conclusory opinions that amount to "weak evidence at best." *Hernandez v. Commissioner of Soc. Sec.,* 644 F. App'x 468, 474 (6th Cir. 2016) (citing *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir. 1993)). Foradis's report was a check-box form and lacked any description or narrative summary about Mr. Davis's condition. (*Id.*, PageID #593–96.) Therefore, the ALJ properly gave her opinion little

weight in making Mr. Davis's disability determination. The Magistrate Judge agreed, and so does the Court.

Relatedly, Foradis also indicated Mr. Davis has a "permanently disability." (*Id.*, PageID #101, 636–38.) But a disability determination is a legal matter under the Social Security Act and—as both the ALJ and Magistrate Judge noted (ECF No. 11, PageID #101; ECF No. 18, PageID #850)—is the providence of the Commissioner, *see* SSR 06–03P, 2006 WL 2329939. The Court agrees that both the ALJ and Magistrate Judge are correct on this front too and, accordingly, overrules Plaintiff's first objection.

## II.    The Testimony of Ms. Davis

Plaintiff objects that the Magistrate Judge improperly determined Ms. Davis's testimony is entitled no deference. (ECF No. 19, PageID #870.) He argues the Magistrate Judge justified the ALJ's treatment of her testimony with a *post hoc* rationalization; he objects now that the Magistrate Judge should have instead required the ALJ to consider "the totality of [Ms. Davis's] testimony" by fully addressing and restating it in his decision. (*Id.*) Plaintiff objects that the ALJ's failure to do so warrants remand. (*Id.*)

As an initial matter, opinion source evidence the ALJ must *consider* differs from what the ALJ must *explain*. *See* SSR 06-03P, 2006 WL 2329939. In his objection, Plaintiff conflates the two. An administrative law judge is only required to explain the weight accorded to treating sources. 20 C.F.R. 404.1527(d); *Blakely v. Commissioner of Soc. Sec.,* 581 F.3d 399, 409 (6th Cir. 2009) (determining the ALJ's failure to provide an explanation of the weight accorded to a treating source's opinion

warranted remand). Any other type of opinion source does not require this same treatment. *Smith v. Commissioner of Soc. Sec.*, 482 F.3d at 875–76 (citing *Wilson v. Commissioner of Soc. Sec.*, 378 F.3d 541, 544–47 (6th Cir. 2004)). However much consideration the ALJ gave Ms. Davis's testimony, he was not required to explain it all.

Unlike treating sources, parents and relatives are "other sources" who have not observed a claimant in their professional capacity in connection with their impairments. SSR 06-03P, 2006 WL 2329939; *see Maloney v. Commissioner of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012). As an other-source opinion, they are not entitled to any special deference. *See* SSR 06–3P, 2006 WL 2329939. While an ALJ should still consider personal observations from other sources because they may offer some value, these opinions are accorded no special weight and may be disregarded entirely. *See* SSR 16-3P, 2017 WL 5180304; *see also*, *e.g.*, *Smith v. Commissioner of Soc. Sec.*, 572 F. App'x 363, 368 (6th Cir. 2014) (determining that while the ALJ was not required to give any weight to the claimant's mother's testimony, it was still used to determine claimant's residual functional capacity); *K.D. v. Commissioner of Soc. Sec.*, No. 1:10-cv-654, 2011 WL 3038367, at *10–11 (N.D. Ohio July 25, 2011) (finding no evidence the ALJ improperly considered a parent's testimony when it was summarized and used).

Despite the limited relevance of lay testimony standing alone, an ALJ should afford "perceptible weight" to lay testimony from a "nonmedical source" if it is in line with treating source opinions. *Lashley v. Secretary of Health & Hum. Servs.,* 708 F.2d

1048, 1054 (6th Cir. 1983) (concluding the ALJ improperly discounted testimony from a claimant's wife about her husband's mental impairment that was later confirmed by his treating physicians); *Simons v. Barnhart,* 114 F. App'x 727, 733 (6th Cir. 2004) (holding the ALJ did not err when discounting a claimant's mother's testimony when it directly conflicted with a treating physician's opinion).

Both the ALJ and the Magistrate Judge recount significant portions of Ms. Davis's testimony, including her observations that her son was "like a five-year-old child" and requires help with personal care. (ECF No. 11, PageID #98; ECF No. 18, PageID #857–58, 861.) There is no evidence that Ms. Davis observed her son in any professional capacity that would warrant affording her testimony greater weight. (ECF No. 11, PageID #98.) It is apparent throughout both the ALJ's decision and the Magistrate Judge's report and recommendation that, although accorded no weight, both fairly considered Ms. Davis's testimony. Moreover, Ms. Davis's opinion directly conflicts with other record evidence, including from Plaintiff himself and his treating physicians. For example, while Ms. Davis opined that Plaintiff has hygiene issues and is unable to care for himself, the record indicates that he was fully able to drive, cook, and take care of himself. (*Compare* ECF No. 13, PageID #789, *with* ECF No. 11, PageID #177–79, 616–17.) The Magistrate Judge properly concluded Ms. Davis's personal observations were not entitled to any deference. (ECF No. 18, PageID #857–58.)

Plaintiff's characterization of the ALJ's statement that he impermissibly "considered the totality of [Ms. Davis's] testimony in reaching his decision" as a *post*

*hoc* rationalization by the Magistrate Judge is also baseless. ([ECF No. 19](), PageID #870.) Where substantial evidence supports an ALJ's decision, the district court need not consider a *post hoc* rationalization objection. *See Poe v. Commissioner of Soc. Sec.*, 342 F. App'x 149, 158 (6th Cir. 2009); *Pasco v. Commissioner of Soc. Sec.*, 137 F. App'x 828, 847 (6th Cir. 2005). Plaintiff asserts such an objection here, and the Court need not consider it further.

The Magistrate Judge fairly considered the ALJ's treatment of Ms. Davis's testimony, and the ALJ afforded it the proper weight and sufficiently considered it. This Court overrules this objection.

## III. The ALJ's Listing 12.05 Determination

Plaintiff makes two objections related to the Magistrate Judge's assessment of the ALJ's Listing 12.05 determination. ([ECF No. 19](), PageID #870–71.) A Listing 12.05 determination involves whether Mr. Davis has an intellectual disorder and is made under one of three sets of criteria, found in Paragraphs A, B, or C. 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.05.

First, Plaintiff objects that the Magistrate Judge failed to recognize he has marked limitations in at least two functional domains under Paragraph B. ([ECF No. 19](), PageID #870.) Second, he objects that the ALJ did not properly address the totality of Paragraph B, mainly because the ALJ found no IQ scores in the relevant range. (*Id.*, PageID #870–71.) The Court considers each objection in turn.

### III.A. Limitations in Two or More Domains

Paragraph B describes three elements Plaintiff must demonstrate to establish that he has an intellectual disorder. Those elements include:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

    a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

    b. A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information (see 12.00E1); or

    b. Interact with others (see 12.00E2); or

    c. Concentrate, persist, or maintain pace (see 12.00E3); or

    d. Adapt or manage oneself (see 12.00E4); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.05(B).

Plaintiff bears the burden to demonstrate that he has a marked limitation in two of those three functional domains listed in subsection 2. *Id.* A marked limitation means that an individual's ability to function "independently, appropriately, effectively and on a sustained basis" in a particular area is seriously limited. *Id.* § 12.00(F)(2)(d). If an individual has only a moderate limitation, it means his ability to function "independently, appropriately, effectively, and on a sustained basis" in a particular area is fair. *Id.* § 12.00(F)(2)(c).

Plaintiff did not carry his burden to demonstrate he has marked limitations in two or more functional domains under Listing 12.05. A claimant must point to specific evidence to establish that he meets each requirement of the listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). In assessing whether a claimant meets the requirements, the administrative law judge must "actually evaluate the evidence" and provide an explanation to "facilitate meaningful judicial review." *Nash v. Commissioner of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at *3 (6th Cir. 2020) (citing *Reynolds v. Commissioner of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). The listings define impairments at a high level of severity and require that they "prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just substantial gainful activity." *Sullivan*, 493 U.S. at 532 (internal quotations omitted).

Plaintiff argues that Dr. Dallara's statements demonstrate Mr. Davis has marked limitations in two or more functional areas. (ECF No. 19, PageID #870–71.) In support of the first domain—understanding, remembering, or applying information—Plaintiff cites Dr. Dallara's finding that he "would be expected to be able to understand and apply instructions in a work setting consistent with extremely low intellectual abilities." (ECF No. 11, PageID #616–17.) Plaintiff also points to Dr. Dallara's finding that he had some difficulty with concentration and comprehension during the interview. (*Id.*)

But this characterization of Dr. Dallara's opinion is inconsistent with the record. Dr. Dallara did not describe these limitations as "marked," and opined that

overall Mr. Davis's insights and judgment appear "somewhat limited" in several of the functional domain categories of Listing 12.05. (*Id.*) Dr. Dallara did not find that the limitations in these areas would entirely impede Mr. Davis's ability to find and maintain employment. (*Id.*, PageID #617.)

For the second domain—interactions with others—the State psychologists opined that Mr. Davis has "moderate limitations" in several areas under Listing 12.05. (*Id.*, PageID #240–41, 279–81.) The areas include concentration, memory, and social interactions with coworkers or supervisors. (*Id.*) Similarly, Dr. Dallara opined that, while Mr. Davis may have "difficulties relating to others," no information suggests "inappropriate comportment during his work history." (*Id.*, PageID #617.)

As to the third domain—concentration, persistence, and maintaining pace—Dr. Dallara found "no direct evidence during the examination to suggest impairment to his persistence or pace." (*Id.*) The State psychologists found that Mr. Davis would have "moderate limitations" in performing at a consistent pace. (*Id.*, PageID #240–41, 279–80.)

The finding for the fourth domain—adapting and managing oneself—is the same. Dr. Dallara found that Mr. Davis is able to dress and clothe himself properly and that his grooming and personal hygiene are adequate. (*Id.*, PageID #614–15.) Additionally, there is substantial evidence throughout the record that Mr. Davis is able to cook, clean, and otherwise care for himself. (*Id.*)

Substantial evidence supports the finding that Plaintiff does not satisfy the requirement of marked limitations in two or more functional areas under Listing

12.05. The Magistrate Judge properly analyzed the doctors' opinions and found that Mr. Davis can fairly function independently, appropriately, effectively, and on a sustained basis.

### III.B. Mr. Davis's Suggested IQ Score

Plaintiff also objects that the ALJ failed to consider his suggested IQ score of 71. (ECF No. 19, PageID #871.) Even construing this objection as one to the Magistrate Judge's treatment of his IQ score, it has no merit.

IQ scores are not dispositive and will not automatically support a finding of mental impairment under Listing 12.05. *Hayes v. Commissioner of Soc. Sec.*, 357 F. App'x 672, 675–76 (6th Cir. 2009). In addition to an *actual* IQ score, a claimant must satisfy the diagnostic description of mental retardation under Listing 12.05. *Cooper v. Commissioner of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007). The diagnostic description of mental retardation requires that an individual have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates onset of impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.05.

In *Cooper*, the court determined that a claimant did not meet the "diagnostic description" of Listing 12.05 despite an IQ score of 71 because he participated in activities inconsistent with mental retardation, including semi-skilled work, playing guitar, and riding a motorcycle. *Cooper*, 217 F. App'x at 452; *see also Courter v. Commissioner of Soc. Sec.*, 479 F. App'x 713, 721 (6th Cir. 2012) (finding that regardless of a claimant's IQ score of 59, she did not qualify under Listing 12.05B because she could care for herself, cook, clean, shop, and maintain personal hygiene).

Mr. Davis did not provide an IQ test score within the relevant range to fulfill the requirements of Listing 12.05. Instead, he argues that Dr. Savitscus and Dr. Reid *suggested* he has a full-scale IQ of 71. (ECF No. 11, PageID #240, 280.) Further, the only IQ test score he provided was an 81, which was a test was from his childhood. (*Id.*, PageID #737.) The substantial evidence demonstrates that Plaintiff would not fulfill the diagnostic description of Listing 12.05. Mr. Davis participated in semi-skilled work for many years, drives a car, cooks, and maintains his personal hygiene. (*Id.*, PageID #98–101, 132.) Therefore, the ALJ properly found that there were no IQ scores within the relevant range to fulfill the Listing 12.05 requirements. And neither the ALJ nor the Magistrate Judge erred in determining that Mr. Davis does not satisfy the requirements of Listing 12.05. Mr. Davis does not have a marked limitation in two or more functional areas and he failed to provide an IQ score in the relevant range that would indicate he is disabled to the point he cannot care for himself. For these reasons, the Court overrules Plaintiff's third objection.

## IV. Step Five

Plaintiff objects to the ALJ's determination at step five because he argues that the ALJ failed to address his work history and portions of the vocational expert's testimony. (ECF No. 19, PageID #871.) But this objection, even construed as an objection to the Magistrate Judge's report and recommendation, has no merit.

At step five, the Commissioner has the burden to show that substantial evidence supports a claimant's ability to perform work available in the national economy, given his residual functional capacity. *Her v. Commissioner of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999). The Commissioner may meet this burden by

making a finding supported by substantial evidence that the claimant can perform "specific jobs." *Id.* at 391–92 (citing *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990)).

An administrative law judge may properly rely on a vocational expert's testimony as substantial evidence to prove a claimant's ability to perform work in the national economy. *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 238 (6th Cir. 2002); 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). The testimony must involve posing hypothetical questions about work available in the national economy, taking into account the claimant's residual functional capacity, including his physical and mental impairments. *See Howard*, 276 F.3d at 238; *see also Blacha v. Secretary of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("If the hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints."); *Casey v. Secretary of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (holding that the content of the hypothetical need only include limitations the ALJ accepts as credible).

Here, before posing hypothetical questions, the ALJ asked the vocational expert to recount Mr. Davis's work history. (ECF No. 11, PageID #146.) The ALJ then posed the first hypothetical to the vocational expert, asking:

> Now, the first hypothetical individual is at the light exertional range, and he does have the following additional limitations that he could never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, and crawl frequently, balance, kneel, and crouch. This individual would need to avoid concentrated exposure to extreme cold, extreme heat, and humidity, as well as all exposure to hazards such as unprotected heights, and moving mechanical parts.

He could perform simple, routine, repetitive tasks, but could not perform tasks at a production-rate pace such as assembly line work.

He could make only simple work-related decisions, and should not be responsible for the safety or welfare of others.

He could interact on an occasional basis with supervisors, and coworkers, with no more than incidental interaction with the general public; should be limited to superficial contact, meaning no sales, arbitration, negotiation, conflict resolution, or confrontation. No group, tandem, or collaborative tasks; no management direction, or persuasion of others.

Now, he could respond appropriately to occasional changes in a routine work setting, as well as any changes that were easily explained and/or demonstrated at best to gradual implementation.

(*Id.*, PageID #146–47.) In response, the vocational expert testified that a person with such impairments could not perform the relevant work that Mr. Davis did in the past. (*Id.*, PageID #147–48.) But the vocational expert did testify that there are significant jobs in the national economy such a person could perform. (*Id.*)

The second hypothetical was the same as the first but included an additional limitation regarding that hypothetical individual's ability to interact with supervisors on an occasional basis and otherwise "work in isolation with no contact with either the general public, or coworkers." (*Id.,* PageID #148.) In response, the vocational expert testified that such a person could not perform jobs within the national economy without an unrealistic accommodation. (*Id.*)

Despite Plaintiff's objection, there is substantial evidence in the record to demonstrate that both the ALJ and the Magistrate Judge properly considered Mr. Davis's work history. In his opinion, the ALJ recounted that Mr. Davis's past relevant work included being a farmworker and sandblaster. (*Id.*, PageID #98,

101–02.) The ALJ used this work history to make his determinations at steps four and five.

Further, Plaintiff's objection inaccurately characterizes the vocational expert's testimony and uses it to attack the ALJ's determination. Plaintiff argues that the questions posed to the vocational expert described his "true limitation" which is whether an individual with similar mental impairments would need occasional supervision to remain on task. (ECF No. 19, PageID #871.) Plaintiff asserts the vocational expert testified that "if an individual needed occasional supervision to make sure the person remained on task . . . [that] would preclude employment." (*Id.*) (internal citations omitted).

In fact, however, the vocational expert testified that it is normal for such an individual to have "occasional supervision" and that type of contact with others at work is "typical." (ECF No. 11, PageID #148-49.) He further testified that such a person would have to stay below 15% time off-task and be absent no more than one day per month to maintain employment. (*Id.*, PageID #149.) Notwithstanding Plaintiff's objection, this testimony supports the ALJ's step-five findings that Mr. Davis is "not disabled" and significant job opportunities exist in the national economy that he can perform. (*Id.*, PageID #102.)

Also, the Commissioner's determination at step five is conclusive. 42 U.S.C. §§ 405(g) & 1383(c)(3). Even if substantial evidence could support a different conclusion, the Commissioner enjoys a "zone of choice" within which he can act without interference from a reviewing court. *Buxton v. Halter*, 246 F.3d 762, 772–73

(6th Cir. 2001); *Her*, 203 F.3d at 389–90 (noting that the ALJ's decision will stand if the evidence could reasonably support the conclusion reached). Here, the Commissioner acted within his "zone of choice."

In reviewing the Commissioner's decision, the ALJ considered whether Mr. Davis's residual functional capacity limited his work. (ECF No. 11, PageID #97–102.) The ALJ determined the additional limitations that would preclude employment—as outlined in his second hypothetical—did not apply to Mr. Davis. (*Id.*, PageID #102.) The Magistrate Judge evaluated these findings and recommended holding that the Commissioner acted within his zone of choice and that substantial evidence supported his determination at step five. (ECF No. 18, PageID #867.) The Court agrees. Both the ALJ and the Magistrate Judge adequately considered Mr. Davis's work history. Further, the hypothetical questions the ALJ posed reflect the ultimate determination of residual functional capacity. Therefore, the findings that Mr. Davis is not disabled and can perform work within the national economy are well within the Commissioner's zone of choice, and the Court overrules Plaintiff's final objection.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's Objections (ECF No. 19), **ADOPTS** the Magistrate Judge's report and recommendation (ECF No. 18), and **AFFIRMS** the Commissioner's decision denying the Plaintiff's request for benefits. The Court **DIRECTS** the Clerk to enter judgment accordingly.

**SO ORDERED**.

Dated:  June 28, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio